UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ROSEMARIE D. THOMAS                    CIVIL ACTION NO. 17-cv-1119

VERSUS                                 JUDGE DOUGHTY

CLECO, ET AL                           MAGISTRATE JUDGE HORNSBY

### REPORT AND RECOMMENDATION

### Introduction

Rosemary Thomas ("Plaintiff"), who is self-represented, filed this civil action against her employer, CLECO, and co-worker Trent McKinley. Before the court is McKinley's Motion to Dismiss (Doc. 24) on the grounds that he is not Plaintiff's employer so he cannot be liable to her under Title VII. For the reasons that follow, it is recommended that McKinley's motion be granted with respect to the Title VII claim, but he should remain a party because of the potential viability of a claim against him for intentional infliction of severe emotional distress.

### Plaintiff's Allegations

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). Plaintiff alleges that she was employed at CLECO. She attended a workplace rescue training class in November 2016 with about 12 other employees. She was the only female and only African-American in the group when she arrived, but they were waiting on an African-American male employee to join them.

The employees were asked to sign an attendance roster as they waited on the final employee to arrive. There was a short piece of rope—also described in the pleadings as a lanyard—that was placed in front of each employee to use for making rescue knots. Plaintiff alleges that she was waiting on the roster to reach her when she heard a sound that caught her attention. It was the plop of one of the ropes hitting against the table. She looked to her left and saw that it had been used to fashion a noose. Plaintiff signed the roster and took a picture of the noose. Plaintiff alleges that Trent McKinley, her manager, was the person who made the noose.

Plaintiff alleges that she was humiliated, fearful, angry, and confused that her manager, who she had much confidence and trust in before this, had taken this action. Mr. McKinley later told the instructor that he had to leave the meeting early for another meeting. As McKinley left, Plaintiff asked if she could speak to him before he left for the day. He agreed. Plaintiff returned to her work area after the training class.

Plaintiff alleges that she was approached by another employee who said that Mr. McKinley wanted to speak with her. She responded that she could not talk that day, sent Mr. McKinley a text explaining, and sent him a picture of the noose. McKinley soon approached her in her work area and said they needed to talk. Plaintiff said she could not talk to him that day, but McKinley said that she should just listen if she did not want to talk. He allegedly apologized and said he did not know it was a "cultural thing" and that he would call human resources and tell them what he did.

Plaintiff alleges that her blood pressure was extremely high the next day, and she called in sick. She called HR later that morning to tell them what happened the day before

and asked for help dealing with the situation. She sought help from counselors arranged through her employee assistance program, spoke to a pastor, and used vacation time to try to sort out what she needed to do going forward. She twice met with HR and the CLECO legal department. Plaintiff alleges that she was offered a job at another office, but it would decrease her pay, so she rejected that proposal.

Plaintiff alleges that she returned to work, but her first day was a nightmare. She asked an HR employee to accompany her on her first day, and they met in Mr. McKinley's office. She asked him why he made the noose. McKinley allegedly said it was not a noose, it was a slip knot, and Plaintiff had not given him a chance to explain. He said that he had already told her he was sorry, and he was through with it. Plaintiff alleges that she was shaking her head no, and McKinley jumped up out of his seat, lunged toward her and shouted, "Don't you do that!" The meeting ended, and Plaintiff alleges that Mr. McKinley would have a frown on his face and "tight eyes" when she would meet him in the hallway in the following weeks.

**Rule 12(b)(6)**

A defendant may file a motion and assert a defense of failure to state a claim upon which relief can be granted. Fed. R. Civ. Pro. 12(b)(6). To avoid dismissal for failure to state a claim, a plaintiff's complaint must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007)). The factual allegations must "raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1965. "[P]ro se complaints are held to less stringent standards than those drafted by lawyers," but even in a pro se

complaint "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002).

**Title VII Claim Against McKinley**

Before filing suit, Plaintiff filed a charge of discrimination with the EEOC that alleged discrimination based on race and sex in violation of Title VII of the Civil Right Act of 1964. She then filed her judicial complaint on a form designed for use in Title VII cases. The statute forbids certain forms of discrimination by an "employer," a term defined as "a person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. §§ 2000e(b), 2000e-2. Mr. McKinley argues that he is entitled to dismissal of any Title VII claim against him because he is not Plaintiff's employer; he is merely a manager and co-worker. Plaintiff's response to the motion talks about the merits of her claims in general, but it does not address this issue.

The Fifth Circuit has held that "there is no individual liability for employees under Title VII." Smith v. Amedisys, Inc., 298 F.3d 434, 448 (5th Cir. 2002). Plaintiff has not specifically invoked the Louisiana employment discrimination statutes, but they also impose liability only on the employer. The statutes do not expose individual co-workers or supervisors to liability. Smith, 298 F.3d at 448 (interpreting prior Louisiana statutes) and Dyas v. City of Shreveport, 2017 WL 3711898, *6 (W.D. La. 2017) (Foote, J.). Accordingly, Plaintiff has not stated a claim against Mr. McKinley under Title VII or the similar Louisiana anti-discrimination statutes.

**Criminal Statute**

Plaintiff's complaint invokes La. R.S. 14:40.5, which is a Louisiana statute that makes it unlawful for any person, with the intent to intimidate a person or group of persons, to place or display a hangman's noose on the property of another, a highway, or other public place. The statute defines a noose as a rope tied in a slip knot that binds closer the more it is drawn and that has historically been used in hanging and for intimidation. Whoever commits the crime may be fined up to $5,000, imprisoned for up to a year, or both.

Plaintiff cites the Louisiana statute in her complaint, but it does not provide a civil remedy for victims of such crimes. A federal court has reviewed the statute in a similar context—a co-worker hung a noose from the plaintiff's workbench—and held that the criminal statute does not provide an independent claim for damages in a civil suit. Drummer v. Parent, 2010 WL 4861448 (M.D. La. 2010) (Brady, J.). Furthermore, this court may not order the institution of criminal charges under the statute. The decision whether to file criminal charges against a person lies with a prosecutor, and private citizens do not have a constitutional right to compel criminal prosecution. Lewis v. Jindal, 368 Fed. Appx. 613, 614 (5th Cir. 2010). Accordingly, any claims asserted under Section 40.5 must be dismissed for failure to state a claim on which relief may be granted.

**Intentional Infliction of Emotional Distress**

A claim that could be presented by Plaintiff's complaint is intentional infliction of severe emotional distress pursuant to Louisiana tort law. Plaintiff's complaint does not invoke the Louisiana tort theory by name or legal citation, but her pro se complaint must

be afforded some leeway, and federal pleadings rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." Johnson v. City of Shelby, 135 S. Ct. 346, 346 (2014). "When a complaint contains sufficient 'factual allegations,' a court should not grant a motion to dismiss 'for imperfect statement of the legal theory supporting the claim asserted.'" Groden v. City of Dallas, 826 F.3d 280, 284 (5th Cir. 2016), quoting Johnson, 135 S.Ct. at 346. McKinley's motion to dismiss does not address this potential tort claim or any others beyond Title VII.

To recover under Louisiana law for intentional infliction of emotional distress, a plaintiff must prove (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that such distress would be certain or substantially certain to result from his conduct. White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991). The conduct complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id.

The complaint alleges facts that might give rise to such a claim against Mr. McKinley, and he has not specifically attacked that claim in his motion to dismiss. The Drummer decision cited above recognized the potential for such a claim when a co-worker hung a noose in the workplace. Drummer, 2010 WL4861448, *6. The issue has not been briefed, and summary judgment rather than a motion to dismiss may be a more appropriate vehicle to challenge the claim. Accordingly, the court should not make a holding at this point as to whether Plaintiff has stated such a claim, but it should not dismiss Mr. McKinley

as a defendant until the potential for such a claim has been addressed after an opportunity for full briefing.

Accordingly,

**IT IS RECOMMENDED** that Trent McKinley's **Motion to Dismiss (Doc. 24)** be **granted** by (1) dismissing all claims against Trent McKinley under Title VII and equivalent Louisiana anti-discrimination statutes and (2) dismissing all claims against all defendants brought pursuant to La. R.S. 14:40.5.  There are potentially other claims against Mr. McKinley, so he should not be dismissed as a defendant.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of April, 2018.

Mark L. Hornsby
U.S. Magistrate Judge