UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ROSEMARIE D. THOMAS                          CIVIL ACTION NO. 17-cv-1119

VERSUS                                       JUDGE DOUGHTY

CLECO, ET AL                                 MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Rosemary Thomas ("Plaintiff"), who is self-represented, filed this employment discrimination action against her employer, CLECO, and co-worker Trent McKinley ("McKinley"). McKinley previously filed a motion to dismiss the Title VII claims against him. The undersigned recommended dismissal of the Title VII claims, but noted that Plaintiff's complaint contained facts that might support a claim for intentional infliction of emotional distress.

Judge Doughty agreed with the recommended dismissal of the Title VII claim against McKinley, but he found that the facts in the complaint fail to rise to the level required in Louisiana for intentional infliction of emotional distress. Judge Doughty afforded Plaintiff an opportunity to amend her complaint in an effort to state an intentional infliction claim, and Plaintiff filed two amended complaints. (Docs. 42 & 45). McKinley has responded with a second Motion to Dismiss (Doc. 43) that is now before the court. For the reasons that follow, it is recommended that McKinley's motion be granted and he be dismissed as a defendant in this case.

**Plaintiff's Allegations**

Plaintiff alleges in her original complaint that she was employed at CLECO. She attended a workplace rescue training class in November 2016 with about 12 other employees. She was the only female and only African-American in the group when she arrived, but they were waiting on an African-American male employee to join them.

The employees were asked to sign an attendance roster as they waited on the final employee to arrive. There was a short piece of rope—also described in the pleadings as a lanyard—that was placed in front of each employee to use for making rescue knots. Plaintiff alleges that she was waiting on the roster to reach her when she heard a sound that caught her attention. It was the plop of one of the ropes hitting against the table. She looked to her left and saw that the rope had been used to fashion a noose. Plaintiff signed the roster and took a picture of the noose. Plaintiff alleges that McKinley, her manager, was the person who made the noose.

Plaintiff alleges that she was humiliated, fearful, angry, and confused that her manager, who she had much confidence and trust in before this, had taken this action. McKinley later told the instructor that he had to leave the meeting early for another meeting. As McKinley left, Plaintiff asked if she could speak to him before he left for the day. He agreed. Plaintiff returned to her work area after the training class.

Plaintiff alleges that she was approached by another employee who said that McKinley wanted to speak with her. She responded that she could not talk that day and sent him a picture of the noose. McKinley soon approached her in her work area and said they needed to talk. Plaintiff said she could not talk to him that day, but McKinley said

that she should just listen if she did not want to talk. He allegedly apologized and said he did not know it was a "cultural thing" and that he would call human resources and tell them what he did.

Plaintiff alleges that her blood pressure was extremely high the next day, and she called in sick. She called HR later that morning to tell them what happened the day before and asked for help dealing with the situation. She sought help from counselors arranged through her employee assistance program, spoke to a pastor, and used vacation time to try to sort out what she needed to do going forward. She twice met with HR and the CLECO legal department. Plaintiff alleges that she was offered a job at another office, but it would decrease her pay, so she rejected that proposal.

Plaintiff alleges that she returned to work, but her first day was a nightmare. She asked an HR employee to accompany her on her first day, and they met in McKinley's office. She asked him why he made the noose. McKinley allegedly said it was not a noose, it was a slip knot, and Plaintiff had not given him a chance to explain. He said that he had already told her he was sorry, and he was through with it. Plaintiff alleges that she was shaking her head no, and McKinley jumped up out of his seat, lunged toward her and shouted, "Don't you do that!" The meeting ended, and Plaintiff alleges that McKinley would have a frown on his face and squint his eyes when she would meet him in the hallway in the following weeks.

Plaintiff repeats some of these allegations in her amended complaints. She also alleges that McKinley "told our group in our morning meeting several times, that we did

not want him to twist off, because it would be hard to put the cap back on the bottle." Plaintiff says she "took that as a threat."

Plaintiff also alleges in her amendments that McKinley "told me I was going to be the guinea pig for our department as it relates to sick leave." Plaintiff complains, "I'm a human being, not a guinea pig." Plaintiff alleges that she had a practice of using accrued vacation and sick time to make up for work time she missed each month due to a longstanding medical issue. She had surgery (hysterectomy) in an attempt to correct the medical issue because she was afraid of losing her job.

Plaintiff attached to her amended complaint a note from a counselor who Plaintiff saw three times. The brief, handwritten note reflects that Plaintiff complained of feeling humiliated, threatened, and fearful, and suffered from nightmares and crying sprees.

**Rule 12(b)(6)**

To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a plaintiff's complaint must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007)). The factual allegations must "raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1965. "[P]ro se complaints are held to less stringent standards than those drafted by lawyers," but even in a pro se complaint "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002).

**Intentional Infliction of Emotional Distress**

To recover under Louisiana law for intentional infliction of emotional distress, a plaintiff must prove (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that such distress would be certain or substantially certain to result from his conduct. White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991).

The conduct complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id.; See also Nicholas v. Allstate Ins. Co., 765 So.2d 1017, 1024-28 (2000) (outlining successful and unsuccessful claims in Louisiana and several other states). Failure to satisfy any element of the claim is fatal. Cook v. Am. Gateway Bank, 49 So. 3d 23, 36 (La. App. 1st Cir. 2010).

Even taking into account Plaintiff's pro se status, Plaintiff's Complaint and amendments fall short of alleging facts that would state a claim for intentional infliction of emotional distress. Plaintiff's amendments set forth only a few additional factual allegations. First, there is an allegation of a possible threat ("we did not want him to twist off") made during a department meeting. Second, Plaintiff's alleges she was told she would be a "guinea pig" with respect to sick leave. Third, Plaintiff had surgery (hysterectomy) in an effort to remedy a long standing health problem. Finally, Plaintiff attached a letter from a counselor that describes Plaintiff's original claims that she was upset and having nightmares.

Plaintiff's first two new allegations, regarding perceived insults and threats, do not rise to the standard of being utterly intolerable. They may have made Plaintiff uncomfortable or feel insulted, but they are ordinary workplace conflicts and not activity that goes beyond all possible bounds of decency. A judge of this court has held in a similar workplace dispute that an eight hour interrogation which included "sarcasm, ridicule, teasing, and taunting" does not rise to the level required by White. Trahan v. Bellsouth Tel., Inc., 881 F. Supp. 1080, 1085 (W.D. La. 1995) (Hunter, J.). Even eight months of directed abuse, including screaming, cursing, and name calling was not considered extreme and outrageous. Beaudoin v. Hartford Acc. & Indem. Co., 594 So.2d 1049 (La. App. 3rd Cir. 1992). Therefore, the first element requiring extreme and outrageous conduct remains unfulfilled.

The allegations about surgery and the comments in the counselor's letter could be seen as an attempt to fulfill the second element, that the emotional distress suffered was severe. The letter from the counselor reflects Plaintiff's allegations of distress, nightmares and crying, but there is no allegation of required therapy, medication, or other treatment as would be expected for severe emotional distress. Based on the letter, it appears that Plaintiff saw the counselor only three times.

Plaintiff's claim of surgery could be severe, if it were caused by a supervisor's abuse. But it was not. Plaintiff's statements that the issue existed "for years, even before I came to Cleco" serve to separate this issue from the alleged workplace abuses.

Accordingly,

**IT IS RECOMMENDED** that Trent McKinley's **Motion to Dismiss (Doc. 43)** be **granted**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 25th day of July, 2018.

Mark L. Hornsby
U.S. Magistrate Judge