**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**SHREVEPORT DIVISION**

| | |
|---|---|
| **ROSEMARIE D. THOMAS** | **CASE NO. 5:17-CV-01119** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CLECO, ET AL.** | **MAG. JUDGE MARK L. HORNSBY** |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Pending here is Defendant Cleco Power, LLC's ("Cleco") Motion for Summary Judgment [Doc. No. 56]. Plaintiff Rosemarie D. Thomas ("Thomas") has not filed an opposition.

Pending also are Thomas's Motion for Leave to Amend [Doc. No. 58] and Supplement/Addition to Motion for Leave to Amend [Doc. No. 61] (both are styled "Joiner of Parties and Amendments of Pleadings"). Cleco has filed an opposition [Doc. No. 60].

For the following reasons, the Court GRANTS Cleco's motion for summary judgment and DENIES Thomas's motions for leave to amend.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Thomas, who is self-represented, filed this civil action against her employer, Cleco, and her manager Trent McKinley ("McKinley").[1] Thomas, who is African-American, asserts claims of discrimination against Cleco in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

---

[1] The Court has previously dismissed all claims against McKinley [Doc. No. 50].

Thomas is employed as a senior utility worker in Cleco's Dolet Hills Power Station ("DHPS"), the only power plant in Louisiana that generates electricity using lignite, a type of locally-mined coal. She has held this position continuously since she was hired by Cleco in 2002. [Doc. No. 56-2, p. 9].

Thomas attended a workplace rescue training class on November 28, 2016, with about 12 other employees. [Doc. No. 56-2, p. 32]. She was the only female and only African-American in the group when she arrived, but they were waiting on an African-American male employee to join them. [Doc. 56-2, p. 76].

The employees were asked to sign an attendance roster as they waited on the final employee to arrive. There was a short piece of rope that was placed in front of each employee to use for making rescue knots. [Doc. No. 56-2, p. 35]. Thomas alleges that she was waiting on the roster to reach her when she heard a sound that caught her attention. It was the plop of one of the ropes hitting against a nearby table. [Doc. No. 56-2, p. 33].

Thomas testified that she looked to her left and saw that the rope had been used by McKinley to fashion a noose. [Doc. No. 56-2, p.33]. She did not see him tie the knot [Doc. No. 56-2, p. 38]. Thomas got up to sign the roster and to take a picture of the noose. [Doc. No. 1-2, p.1; Doc. No. 56-2, p. 39].

McKinley testified that the knot he tied was not a noose but a slip knot, one of the knots he remembered from his service in the Navy and which he used to tie down loads in his truck. [Doc. No. 56-4, p. 1].

Thomas alleges that she was humiliated, fearful, angry, and confused that her manager, in whom she had much confidence and trust before this, had taken this action. As McKinley left the meeting, Thomas asked if she could speak to him before he left for the day. [Doc. No. 56-2,

p. 34]. He agreed. McKinley testified that he was unaware that the knot he had tied was perceived as offensive and assumed Thomas wanted to discuss something else. [Doc. No. 56-4, p.2].

Thomas returned to her work area after the training class. Thomas was approached by another employee who said that McKinley wanted to speak with her. She responded that she could not talk that day, sent McKinley a text explaining that she was upset, and sent him a picture of the noose. McKinley responded immediately with a text stating: "I am so sorry. I wasn't aware that would be offensive. I am completely ignorant and need an opportunity to understand." [Doc. No. 56-2, p. 112].

McKinley soon approached her in her work area to apologize in person. Thomas told McKinley she could not talk to him that day, but McKinley said that she should just listen if she did not want to talk. He apologized and said he did not know it was a "cultural thing" and that he would call human resources and tell them what he did. [Doc. No. 56-2, p. 35, 48].

McKinley called his supervisor, plant manager Pat Dupuy, and Human Resources representative, Traci O'Brien ("O'Brien") to report the incident. [Doc. No. 56-4, p. 2]. O'Brien immediately made arrangements for herself and Cleco's in-house counsel to travel to DHPS the next day to begin investigating the incident. [Doc. No. 56-3, p.1].

Thomas alleges that her blood pressure was extremely high the next day, and she called in sick. [Doc. No. 56-2, p. 66]. On December 2, 2016, Thomas met with O'Brien and Cleco's in-house counsel at a Burger King in Coushatta, Louisiana, near Thomas's home to discuss the incident. O'Brien explained that Cleco wanted to accommodate Thomas and get her back to work in an environment where she felt comfortable. [Doc. No. 56-3, p. 11]. She encouraged

Thomas to apply for leave under the Family Medical Leave Act ("FMLA"), so that she could take time off without having to use her accrued vacation. *Id*.

During another meeting at the Coushatta Burger King on December 7, 2016, Thomas told O'Brien that this was not the first time a noose had been made at the plant. She stated there was another incident in their department many years ago which was not reported because the African-American employee involved was afraid he would lose his job. [Doc. No. 56-3, p. 14].

After interviewing twelve employees at DHPS, not including Thomas, and meeting with the training instructor who had conducted the training session, O'Brien determined McKinley did not tie the knot with any malicious or racial intent. Nonetheless, Dupuy, McKinley's supervisor, placed a disciplinary memo in McKinley's personnel file to memorialize the incident. Additionally, McKinley was required to complete additional training on the topics of diversity and unconscious bias. [Doc. No. 56-3, p.15].

On December 18, 2019, Thomas and O'Brien discussed the possibility of Thomas being transferred to other positions. According to O'Brien, Thomas stated she did not mind going back to work for McKinley, that she actually liked him but was just hurt by what he did. [Doc. No. 56-3, p. 17].

Thomas alleges that when she returned to work on December 27, 2016, her first day was a nightmare. She asked O'Brien to accompany her, and they met in McKinley's office. She asked him why he made the noose. McKinley replied it was not a noose, it was a slip knot, and Thomas had not given him a chance to explain. She alleges that he said that he had already told her he was sorry, and he was through with it. Thomas alleges that she was shaking her head "no," and McKinley jumped up out of his seat, lunged toward her and shouted, "Don't you do that!" [Doc. No. 56-2, p. 142-143].

But O'Brien states that she was at the meeting, and she only remembers McKinley being very apologetic toward Thomas. [Doc. No. 56-3, p.2].

After McKinley apologized again at that meeting, Thomas agreed she could continue to work with McKinley and do her job. [Doc. No. 56-3, p. 19, 20]. O'Brien reminded them of Cleco's zero-tolerance policy for retaliation and encouraged Thomas and McKinley to continue to communicate with each other. [Doc. No. 56-4, p. 2].

In her deposition, Thomas confirmed that she felt she could continue working with McKinley. Thomas also testified that by her third and last employee assistance program counseling session on January 10, 2017, she felt much better and was doing well. [Doc. No. 56-2, p. 107].

Thomas alleges, however, that McKinley would have a frown on his face and "tight eyes" when she would meet him in the hallway in the following weeks. [Doc. No. 56-2, p.160].

On January 18, 2017, Thomas filed a Charge of Discrimination with the Louisiana Commission on Human Rights ("LCHR") and the Equal Employment Opportunity Commission ("EEOC"). Thomas asserted claims of discrimination on the basis of race and sex related solely to the noose incident. The EEOC issued a Dismissal and Notice of Rights letter on July 5, 2017, with no finding of discrimination.

This suit was filed on September 5, 2017. Thomas seeks $1 million in damages. [Doc. No. 58, p. 1].

Although the complaint does not specify the type of claim Thomas seeks to assert, she attached her EEOC Charge, which states, "I believe that I have been discriminated against because of my sex, female, and my race, Black, in violation of Title VII." An attachment to the complaint contains additional allegations that purport to establish discrimination. In her

deposition, however, Thomas testified her claims arise solely from the incident on November 28, 2016. [Doc. No. 56-2, p. 28].

On March 18, 2019, Cleco filed this motion for summary judgment.

On March 22, 2019, Thomas filed a document titled "Joiner of Parties and Amendments of Pleadings" [Doc. No. 58], which the Court construed as a motion for leave to amend complaint and noticed it for briefing. Thomas then filed another document on March 27, 2019. The March 27 document appears to be largely the same document as the earlier one until the end of page four, where she has added about another page of new material. This filing is accompanied by an exhibit (a mid-year review) that is different from the exhibits attached to the earlier filing. The Court construes the March 27 filing as a supplement/addition to the March 22 filing.

On April 1, 2019, Cleco filed an opposition to Thomas's motion for leave to amend [Doc. No. 60].

Thomas's opposition to Cleco's motion for summary judgment was due no later than April 9, 2019. [Notice of Motion Setting Doc. No. 57]. Thomas has not filed an opposition.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact.

*Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248.)

Failure to file an opposition and statement of contested material facts requires the Court to deem the movant's statements of uncontested material facts admitted for purposes of the motion. *Local Rule, LR 56.2W.*

**B.  Analysis**

    **1.  Cleco's Motion for Summary Judgment**

Cleco moves for summary judgment on the basis that Thomas has failed to establish a *prima facie* claim under Title VII. As noted above, Thomas has not filed an opposition. The Court nevertheless has considered the assertions of fact she made in her sworn deposition.

Although Thomas has not pleaded it as such, it appears she intends to assert a hostile work environment claim as opposed to a claim for discrimination based on an adverse employment action. If she were asserting a claim for discrimination based on an adverse employment action, she would have the burden of establishing a *prima facie* case involving hiring, granting leave, discharging, promoting, or compensating. *McCoy v. City of Shreveport*, 492 F.3d 551, 558 (5th Cir. 2007). Thomas has made no such showing here. To the contrary, she has remained in Cleco's employ through the present. Furthermore, in 2017, she received a five percent raise, with which she has testified she was happy and which is the largest raise she has received to date. [Doc. No. 56-2, p. 93].

On the other hand, in order to make out a *prima facie* case of hostile work environment, Thomas must demonstrate that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of her employment; and (5) Cleco knew or should have known of the alleged harassment and failed to take prompt remedial action. *Brooks v. Firestone Polymers, L.L.C.,* 640 F. App'x 393, 399 (5th Cir. 2016). Failure to prove any of these essential elements is fatal to her claim. *Anderson v. YRC, Inc.*, 742 F. App'x 27 (5th Cir. 2018) (Mem. Op.).

With regard to the fifth factor, under Title VII, an employer's liability for such harassment may depend on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a "supervisor," however, different rules apply. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an

8

affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided. *Vance v. Ball State University*, 570 U.S. 421, 424 (2013).

Cleco contends it is entitled to summary judgment dismissing Thomas's hostile work environment claim based on her failure to prove at least three of these essential elements.

First, Cleco argues that Thomas was not subjected to unwelcome harassment. Cleco acknowledges that "[t]he making of nooses is at least arguably objectively offensive, as it evokes the image of race-motivated lynching." *Bell v. Ingalls Shipbuilding, Inc.*, 297 F.3d 657 (5th Cir. 2000). However, Cleco denies the knot McKinley tied at the training session on knot-tying could reasonably be perceived as a noose, especially as the facts are devoid of any other indicia of harassment. Cleco further asserts that McKinley did nothing to bring his knot to Thomas's attention, and that Thomas had to get up and walk over to sign the roster and to take the picture.

Thomas attached her picture of the knot as an exhibit to her Complaint. [Doc. No. 1-2, p. 1]. Although the Court agrees that the facts are devoid of any other indicia of harassment, the Court nevertheless finds that the knot could reasonably be perceived as a noose, creating a genuine issue of material fact.

Second, Cleco argues that the alleged harassment did not affect a term, condition, or privilege of Thomas's employment. The Court agrees with this argument.

Title VII protects employees from conduct that is "severe or pervasive enough" to "create a work environment that a reasonable person would find hostile or abusive." *Lister v. Nat'l Oilwell Varco, L.P.*, No. CIV.A. H-11-01, 2013 WL 5515196, at *28 (S.D. Tex. Sept. 30, 2013) (the plaintiffs failed to make a *prima facie* showing of harassment when the only evidence

9

identified were scratch marks in another employee's toolbox reading, "NIG," which they failed to show was directed at them).

Fifth Circuit precedent precludes finding that the isolated incident in this case was severe or pervasive enough as to actually alter the terms of Thomas's employment. In *Brooks v. Firestone Polymers, LLC*, 640 F. App'x 393, 400 (5th Cir. 2016), the plaintiff's allegations that he found a miniature noose inside of his hardhat at work was not *prima facie* evidence of a hostile work environment where the incident appeared isolated and the plaintiff failed to show how the incident affected the terms and conditions of his employment.

With regard to Thomas's statement that there was another noose incident many years ago, the Fifth Circuit has affirmed that "conclusory allegations of prior noose discoveries" in years' past will not substantiate a hostile work environment claim brought by a plaintiff who did not have any involvement in the prior incident and who had not previously complained of discrimination. *Tolliver v. YRC Inc.*, No. 3:15-CV-2554-C, 2017 WL 5640617, at *3-4 (N.D. Tex. Feb. 8, 2017), *aff'd* 729 F. App'x 332 (5th Cir. 2018) ("The Fifth Circuit has stated that the mere presence of a noose in the workplace, while extremely serious and reprehensible, does not automatically create a per se hostile work environment (particularly when a plaintiff cannot show that he saw the noose personally or that its display was directed at him).").

There is nothing to show that McKinley directed the alleged noose at Thomas. Further, as Thomas herself testified, McKinley improved the conditions of her employment with his management and was "a great manager" [Doc. No. 56-2, p. 49]. Although Thomas was offered the opportunity to return to DHPS in other positions, under the direction of a different department manager, Thomas still chose to return to work under the direction of McKinley.

10

According to O'Brien, Thomas stated she did not mind going back to work for McKinley, that she actually liked him but was just hurt by what he did. [Doc. No. 56-3, p. 17].

Even after returning to work, Thomas does not dispute that she "felt better;" to the contrary, she has consistently maintained she is "doing good." In 2017, Thomas received a raise in excess of any of her previous raises throughout fifteen years of employment with Cleco. [Doc. No. 56-2, p. 93]. Thus, there is no genuine issue of material fact that the terms of Thomas's employment were not affected by the alleged incident.

Finally, Cleco asserts Thomas's claim fails because it is indisputable that Cleco took prompt remedial action to address and correct the alleged harassing behavior. However, having found that Thomas's failure to satisfy the foregoing essential element is fatal to her claim, the Court need not address this argument.[2]

In summary, failure to prove any of the five essential elements to a hostile work environment claim is fatal to the claim. Here, Thomas's claim fails with regard to the essential element that the alleged harassment affected a term, condition, or privilege of her employment.

For these reasons, Cleco's motion for summary judgment is GRANTED.[3] Thomas's claims are DISMISSED WITH PREJUDICE in their entirety.

---

[2] Cleco argues that where an employer takes allegations of harassment seriously, conducts a prompt and thorough investigation, and quickly implements remedial and disciplinary measures based on the results of its investigation, a court may find "the employer took prompt remedial action as a matter of law." *Williams-Boldware v. Denton Cty., Tex.*, 741 F. 3d 635, 640 (5th Cir. 2014). Cleco further contends that it opened an investigation into the slip knot incident and began interviewing witnesses the day after the incident was reported by Thomas. Upon receiving notice of the alleged incident, Cleco arranged for its counsel and a human resources representative to participate in the investigation, which included interviews with over twelve witnesses and two meetings with Thomas. Additionally, Cleco imposed discipline on McKinley by placing a written disciplinary memo in his file and mandating additional training on diversity and unconscious bias. [Doc. No. 56-4, p.2]. Cleco therefore argues that it took prompt remedial action as a matter of law.

[3] Cleco additionally argued that it was entitled to summary judgment on the basis that Thomas has failed to exhaust her administrative remedies; however, in view of the Court's finding that Cleco is entitled to summary judgment on the hostile work environment issue, the Court need not reach that argument.

### 2. Thomas's Motion for Leave to Amend

As indicated above, on March 22, 2019, Thomas filed a document titled "Joiner of Parties and Amendments of Pleadings" [Doc. No. 58], which the Court construes as a motion for leave to amend complaint, and, on March 27, 2019, Thomas filed another document [Doc. No. 61] with the same title which appears to be largely the same document as the earlier, which the Court construes as a supplement/addition to the March 22 filing.

Although Thomas's motion in large part merely re-states her prior allegations, it also adds an additional charge of sexual harassment. Thomas alleges that some time prior to September 2, 2015, she broke her fingers, and, as an African-American co-worker assisted her down some stairs while holding her around her waist to support her, he groped her right breast.

On April 1, 2019, Cleco filed an opposition on the grounds that Thomas's motion for leave to amend is untimely, procedurally improper, unduly prejudicial, and seeks to add futile claims.

When deciding whether to grant a party leave to amend, the court considers the following factors: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Absent any of these factors, leave should be granted. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citation omitted).

With regard to the first factor, undue delay, Thomas's present motion to amend was filed over eighteen months after her original complaint was filed, over five months after her deposition was taken, and after Cleco filed its motion for summary judgment. Moreover, as the attachment to her motion demonstrates, the claim she seeks to add is based on events that

occurred in 2015. [Doc. No. 58-1.] Thomas has offered no explanation as to why this claim could not have been brought in her original complaint or in either of her two amended complaints in this matter. Thomas's request is, thus, unduly delayed. *See Whittington v. Minnesota Life Ins. Co.*, No. CV 09-0630, 2010 WL 11610313, at *2 (W.D. La. Aug. 27, 2010) (denying leave to amend where plaintiff should have been aware of facts included in proposed amendment at the time suit was originally filed).

With regard to the third factor, repeated failure to cure deficiencies in prior amendments, Thomas has been permitted to amend her complaint on two prior occasions. [Doc. Nos. 42, 45]. Therefore, she has been given ample opportunity to include the claims she now wishes to add. Additionally, Thomas has failed to submit a proposed third amended complaint with her motion, even though the Court denied a previous motion to amend for this same reason. [Doc. No. 33].

With regard to the fourth factor, undue prejudice to the opposing party, Cleco would be unduly prejudiced if Thomas were allowed to amend her complaint at this late juncture. Cleco has already taken Thomas's deposition and filed a motion for summary judgment. Thus, Cleco would have to re-depose Thomas based on her new allegations, related to events that allegedly occurred in 2015, and would have to file a new summary judgment motion covering the additional claims. The process could go on forever.

The Fifth Circuit has emphasized "the fact that a defendant has filed a motion for summary judgment is significant in the determination whether a plaintiff's motion to amend is timely." *Little v. Liquid Air Corp.*, 952 F.2d 841, 846, n.2 (5th Cir. 1992). The Fifth Circuit has noted that "[m]uch of the value of summary judgment procedure ... would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then,

13

should that theory prove unsound, come back long thereafter and fight on the basis of another theory." *Id*. Thus, this factor also operates against granting the motion to amend.

With regard to the final factor, futility of the amendment, Thomas is seeking to add a sexual harassment claim based on events that allegedly occurred in 2015. She did not include these allegations, or anything remotely related, in her EEOC charge underlying this suit, making her new claim untimely and likely administratively barred. It would therefore be futile to allow her to pursue it.

Further, even if her new claim were timely and had been presented to the EEOC, she admits that she did not timely report the alleged sexual harassment to management and that the alleged perpetrator "was moved to another department because of what he did." [Doc. No. 58, p. 4]. Thus, even accepting Thomas's new allegations as true, she still would not be able to state a sexual harassment claim upon which relief could be granted against Cleco.

The Court concludes, after careful consideration of all of the above factors, that Thomas's motion for leave to amend should be **DENIED.**

### III. CONCLUSION

For the foregoing reasons, Cleco's Motion for Summary Judgment [Doc. No. 56] is GRANTED. Thomas's claims are DISMISSED WITH PREJUDICE in their entirety.

Further, Thomas's Motion to Amend [Doc. Nos. 58, 61] is DENIED.

MONROE, LOUISIANA, this 17th day of April, 2019.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE